IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


**ROBERT McMICHAEL**                                                                **PLAINTIFF**

**VS.**                                  **CIVIL ACTION NO.: 2:16CV148-KS-MTP**

**TRANSOCEAN OFFSHORE USA, INC.;**
**TRANSOCEAN OFFSHORE**
**DEEPWATER DRILLING, INC. AND**
**TRANSOCEAN RIGP DCL, LLC.**                                  **DEFENDANT**

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF FACTS**

Plaintiff was hired by Transocean on March 9, 2001. (McMichael deposition, Exhibit "1"). He was assigned to the Clear Leader, while it was being constructed in Korea on February 5, 2009 (McMichael deposition, Page 48; Exhibit "1"). His position on the Clear Leader was that of a Toolpusher (McMichael deposition, Exhibit "1"). Mr. McMichael's date of birth is October 24, 1955 (McMichael deposition, page 13). He was terminated on April 25, 2014 and was fifty-nine (59) years of age at the time of his termination (McMichael deposition, page 48). At the time of his termination, Mr. McMichael was classified as a "client" Toolpusher (Kennedy deposition, pages 23-24). He was replaced by Jody Eckert, whose date of birth is December 9, 1965 (Lopez deposition, Exhibit "4"). He is more than ten (10) years younger than Mr. McMichael.

According to Defendants, McMichael was terminated pursuant to a process called "high grading" or Performance-Ranking-Potential Scoring Process (Exhibit "A"; also Lopez deposition, page 9). At the conclusion of this scoring process, Plaintiff was assigned a score of 71%. Mr. Eckert, approximately ten (10) years younger than Mr. McMichael, was assigned a score of 59% (Lopez deposition, Exhibit "6").

Mr. McMichael alleges age discrimination based on the following factors, each of which is described in more detail in the Argument below:

1. Mr. McMichael was replaced by a younger, less qualified employee, specifically, Jody Eckert. Jody Eckert is more than ten (10) years younger than Mr. McMichael.

2. Allegations that Mr. McMichael spent too much time in the Senior Toolpusher's office are uncorroborated. There is no mention of this alleged criticism in Mr. McMichael 2014 evaluation and the subject was never addressed by any of Mr. McMichael's supervisors, including the Rig Manager, Mr. Kennedy.

3. Mr. McMichael's composite Performance-Ranking-Potential Score was 71% and remained at 71%. Mr. Eckert's composite score was 59%.

4. Testimony that Mr. McMichael was ranked 4th out of 4 Toolpushers on the Clear Leader conflicts with evidence that show that there were six (6) Toolpushers on the Clear Leader.

5. There were coded references to Mr. McMichael's age by Robert Owen, Offshore Installation Manager (O.I.M.) on the Clear Leader and these occurred in July, 2017. In his Declaration, Plaintiff makes clear why there had to be six (6), not four (4)

Toolpushers.  He and Chris Munger were the "client" Toolpushers.  Karl Schneider, William Jerome Lepard, Billy Lee and Dwayne Latiolais were the four (4) other Toolpushers.  Plaintiff and Mr. Munger worked from 6:00 p.m. to 6:00 a.m.  The other Toolpushers worked from 12:00 a.m. to 12:00 p.m. and from 12:00 p.m. to 12:00 a.m.  All of the other Toolpushers were *younger* than Mr. McMichael.

Under the Performance-Ranking-Potential Scoring (or the High Grade Scoring Process), Mr. McMichael had a composite score of 71%.  There is no record where Defendants show that he ever received anything but a score of 71%.  He was replaced by a younger, less qualified employee, Jody Eckert who had a composite score of 59%.  There is no record that Mr. McMichael was ever advised that he was spending too much time in the office.  It is clear from Mr. McMichael's Declaration that he was, in fact, required to spend time in the office in order to complete the International Association of Drilling Contractors (IADC) Report and the Maintenance Morning Reporting.  These reports were required on a daily or nightly basis, and copies of both reports were provided to the Rig Manager, Mr. Kennedy.  There is no evidentiary basis to support the allegation that Mr. McMichael was spending too much time in the office.  Further, this issue was never addressed with Mr. McMichael and it appears to be an attempt to justify his termination after-the-fact.

## SUMMARY JUDGMENT STANDARD

The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrates the absence of a genuine issue of material fact.  *Washburn v. Harvey,* 504 F. 3d 505, 508 (5th Cir. 2007).  The non-movant must then point to or produce

specific facts demonstrating that there is a genuine issue of material fact. *Id.* All facts and inferences are to be considered in the light most favorable to the non-movant, *Blow v. City of San Antonio,* 236 F. 3d 293, 296 (5th Cir. 2001).

In *Bienkowshi v. American Airlines,* 851 F. 2d 1503 (5th Cir. 1988), the Fifth Circuit reversed the district court's summary judgment for the employer in an age discrimination case on the grounds that the district court did not rule on the sufficiency of the employee's *prima facie* case, having focused the court's attention on the lack of evidence that the employer's actions were a pretext for age discrimination. The Fifth Circuit held that the employee had established a *prima facie* case of age discrimination by establishing that he possessed the necessary qualifications for his job at the time he was terminated at age 59.

## ARGUMENT

### I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 L.Ed. 2d 105, 120 S. Ct. 2097 (2000), the Supreme Court held that the fact finder may infer "the ultimate fact of intentional discrimination" without additional proof once the Plaintiff has made out her *prima facie* case if the fact finder rejects the employer's proffered non-discriminatory reasons as believable. *Reeves* at 147.

In *Reeves*, the Supreme Court further stated as follow:

> "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves* at 147.

The Supreme Court continued as follows:

> "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision... Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves* at 146

The facts in this case are directly parallel to those in *Reeves* as to the Defendants' explanation for Plaintiff's termination. After completion of discovery, it is apparent that Defendants' explanation is "unworthy of credence."

In a letter dated September 8, 2016 from Myrtle M. Addison, Senior Enforcement Investigator with the Equal Employment Opportunity Commission (EEOC), stated Transocean's reasons for terminating Mr. McMichael were as follows:

> "Transocean described the replacement as one who was previously assigned to the Deepwater Invictus and whose position on Invictus was eliminated with a change in customary requirements on that rig, requiring a smaller workforce; and that employee was hence laid off as part of ongoing layoffs in the oil and gas industry. Transocean reporting that Charging Party McMichael had good overall performance evaluation; and his replacement employee had 'superior' performance evaluations and was identified by rig management as a superior employee during the 'high-grading' process period." (Exhibit "A")

Discovery in this case establishes that as applied to Plaintiff McMichael, Defendants' "high-grade" scoring process (also identified as Performance-Ranking-Potential scoring process) is riddled with inconsistencies, to the extent that it is reasonable to infer from the falsity of Defendants' explanation that "the employer is dissembling to cover up a discriminatory

purpose," i.e., age discrimination.

According to the deposition testimony of Jennifer Lopez, HR Manager with Transocean, and designated as Defendants' Rule 30(b)(6) representative, the high grade scoring process and the Performance-Ranking-Potential process are the same (Lopez deposition, page 9). Ms. Lopez identified three (3) basic components: Performance, Ranking and Potential (Lopez deposition page 8).

"Performance" is a two (2) step procedure. The first determination is the number of points received out of the possible number of points. For example, Mr. McMichael received 44 points out of a possible 72 (Lopez deposition 12-13). That resulted in a score of 61%. The second determination is based on the fact that Mr. McMichael was graded as Fully Successful on his 2014 evaluation, resulting in a second score of 80%. The 80% and 61% were then averaged, resulting in a Performance Score of 71% (Lopez deposition, page 13).

"Ranking" is a second procedure which according to Ms. Lopez is conducted by the Rig Manager (Lopez deposition, page 14). According to Ms. Lopez, the ranking can either increase the performance score or decrease the performance score (Lopez deposition pages 21-22).

"Potential" is the potential for promotion to the next position or higher (Lopez deposition, page 21). Ms. Lopez and Gordon Kennedy, the Rig Manager, are now claiming that Mr. McMichael received a zero (0) under the "Potential" factor. However, as noted, Plaintiff's performance score was 71% and there is no document generated by Transocean to show that his composite score was ever anything but 71%. (Lopez deposition, Exhibit No. 6). Plaintiff submits that it is an issue of fact as to whether or not the "Potential" factor was ever applied to

Mr. McMichael or whether or not the claim of zero (0) for this factor is an after the fact argument by Defendants.

Jody Eckert, Mr. McMichael's replacement, had a composite score of 59%. Mr. McMichael, whose date of birth is October 24, 1955, was replaced by Jody Eckert, whose date of birth is December 9, 1965, exactly ten (10) years, one (1) month and fifteen (15) days younger than Mr. McMichael. In short, Mr. McMichael was replaced by a younger less qualified individual.

However, the discrepancies do not stop there. According to Ms. Lopez, Mr. McMichael was ranked 4th out of four (4) Toolpushers on the Clear Leader, (Lopez deposition, page 14). According to Ms. Lopez, Mr. Kennedy stated that "Mr. McMichael was spending a lot of time in the office where (sic) he was supposed to have been on deck supervising." (Lopez deposition, page 18).

In his deposition, Mr. Kennedy is anything but clear regarding his ranking of Mr. McMichael. There is nothing in Mr. McMichael's 2014 evaluation referencing or claiming that he spent too much time in the office. In addition, he was never counseled that he was spending too much time in the office, nor was this even mentioned to Mr. McMichael. (See McMichael Declaration.) Further, at the time of his termination on April 25, 2015, the Clear Leader did not have four (4) Toolpushers, it had six (6). Two (2) of the Toolpushers, Chris Munger and Mr. McMichael, worked nights, from 6:00 p.m. until 6:00 a.m. Munger was Mr. McMichael's counterpart when Mr. McMichael was off. Both Mr. McMichael and Mr. Munger were designated at "client" Toolpushers. Their job was to coordinate, not only the drilling operation,

but all aspects of the job with the client, Chevron. They had to use the Senior Toolpushers' office and computer in order to perform their job as the "client" Toolpusher. But, that was in order to produce the necessary I.A.D.C. report. Mr. McMichael had to be present at the actual drilling operation to oversee any maintenance. As will be noted from Exhibit "5" to Mr. Kennedy's deposition, Mr. Kennedy was not stationed on the Clear Leader. In 2014, he made five (5) visits to the Clear Leader ranging from two (2) to seven (7) days. (Kennedy deposition, Exhibit "5"). From January 2015 to April 2015, he made three (3) additional visits, ranging from two (2) to three (3) days. (Kennedy deposition, Exhibit "5"). He claims he observed Mr. McMichael on several occasions but could not give any specifics. (Kennedy deposition, pages 33-34).

In addition to Mr. McMichael and Mr. Munger, the "client" Toolpushers, there were four (4) other Toolpushers that worked directly with the Drillers and they worked shifts from 12:00 a.m. to 12:00 p.m. and from 12:00 p.m. to 12:00 a.m. They would be directly responsible to oversee the actual drilling work on the deck and mud module. Most importantly, Mr. McMichael was the oldest Toolpusher on the Clear Leader (McMichael Declaration). It would only make sense, that Mr. McMichael had to be ranked either with all six (6) of the Toolpushers or only with the other "client" Toolpusher. It is clear that Ms. Lopez's testimony regarding the ranking of Mr. McMichael as 4th out of 4 Toolpushers makes no sense and is inconsistent with the facts.

As summarized by the EEOC, the employer's reason for terminating Mr. McMichael's case is unworthy of credence. The decision was not based on a comparison of the evaluations

alone. It was based on a composite score. Mr. McMichael carried with him and received a composite score of 71%. Mr. Eckert had a composite score of 59%. Based on these relative scores, and based on the age discrepancy between Mr. McMichael and Mr. Eckert, the only conclusion is that Mr. McMichael was discriminated against because of his age.

This conclusion is consistent with the statements by Robert Owen, an O.I.M. on the Clear Leader, to the effect that Mr. McMichael had nothing to worry about because he was over 59 ½ years of age. In short, Mr. McMichael could access his pension without receiving a financial penalty from the IRS. (See McMichael Declaration). These were coded references to Mr. McMichael's age.

In *Loeb v. Best Buy Co. Inc.,* 537 F. 3d 867 (8th Cir. 2008), the Court of Appeals succinctly stated as follows:

> "Pretext may be proven by evidence showing a younger, less-qualified, weaker-performing employee replaced an older employee." *Loeb* at 875.

That is precisely what happened in this case, a younger less qualified employee who carried a score of 59% was allowed to replace an older more qualified employee who carried a score of 71%. Even if this is considered a "mixed- motive" case, Plaintiff is not required to present direct evidence of discrimination. See *Desert Palace Inc. v. Costa,* 539 U.S. 90, 120 S.Ct. 2148, 156 L.Ed. 2d 84 (2003). This means that if Defendant had the desired objective of achieving a reduction in force, it could not do so in a way that discriminated against Robert McMichael because of his age. See also *McCorstin v. United States Steel Corp.,* 621 F. 2d 749, 754 (5th Cir. 1980); *Stennett v. Tupelo Pub. Sch. Dist.,* 619 Fed. Appx. 310 (5th Cir. 2015); *Raad*

*v. Fairbanks North Star Borough School District,* 323 F. 3d 1185 (9th Cir. 2003).[1]

There is a fundamental and genuine issue of material fact in this case: WHY WAS ROBERT McMICHAEL TERMINATED?

Ms. Lopez says he was ranked 4th out of 4 Toolpushers on the Clear Leader (Lopez deposition, page 14). At one point in his deposition, Mr. Gordon Kennedy also states that he ranked Mr. McMichael "Four out of four." (Kennedy deposition, page 24). But, there were six (6) Toolpushers on the Clear Leader, not four (4). (Kennedy deposition, page 24). There were two (2) "client" Toolpushers, Mr. McMichael and Mr. Munger (McMichael Declaration) and four (4) other Toolpushers: Schneider, Latiolais, Leopard and Lee. (Kennedy deposition, page 24). Once it was established that there were six (6) Toolpushers on the Clear Leader, Mr. Kennedy could not give a direct answer as to how he ranked the Clear Leader Toolpushers. (Kennedy deposition, pages 24-26). Ultimately, Mr. Kennedy could not remember whether he ranked "4" or "5" Toolpushers on the Clear Leader. (Kennedy deposition, page 31).

Ms. Lopez claims Plaintiff was downgraded because, according to Mr. Kennedy, he spent too much time in the office. (Lopez deposition, page 18). However, in his deposition, Mr. Kennedy never states that the reason he downgraded Mr. McMichael was that Mr. McMichael spent too much time in the office. At one point, he does state that he observed Mr. McMichael in the Toolpusher office (Kennedy deposition, page 33), but he does not state that the basic reason for his low ranking of Mr. McMichael is that Mr. McMichael spent too much time in the Toolpusher office. In fact, Mr. Kennedy's deposition is replete with testimony as to why the

---

[1] Even with a reduction in force, employers cannot discriminate on the basis of age.

"client" Toolpusher would be required to spend additional time in the office as opposed to the other four (4) non-client Toolpushers. Plaintiff would submit that in his deposition, Mr. Kennedy never gives a cogent, persuasive reason for his low ranking of Mr. McMichael. His references to Mr. McMichael's 2014 Evaluation are not consistent with the testimony of Ms. Lopez. It needs to be emphasized that Mr. McMichael has never received any communication from Mr. Kennedy, or his supervisors on the Clear Leader that he was spending too much time in the Toolpusher office. There is nothing in the 2014 Evaluation to that effect. Contrary to the testimony of Mr. Kennedy, Ms. Lopez never mentions Mr. McMichael's 2014 Evaluation as a basis for his low ranking.

However, there are further discrepancies and inconsistencies in the position taken by Defendants in order to justify Mr. McMichael's termination.

Mr. McMichael had a performance rating of 71%. Nevertheless, he was replaced by Jody Eckert, an employee ten (10) years younger than Mr. McMichael, who had a composite score of 59%. Both Lopez and Kennedy, claim that Mr. McMichael's performance score was reduced because of his low ranking. But, neither Mr. Lopez nor Mr. Kennedy could testify as to the extent Mr. McMichael's 71% score had been reduced. As noted, there are no records produced by Defendants that show Mr. McMichael had any score other than 71% at the time of his termination. When Mr. Kennedy was asked during his deposition whether or not he could give any other score that was assigned to Mr. McMichael at the time of his termination, Mr. Kennedy's blunt response was as follows:

>  "A.   Nope."  (Kennedy deposition, page 20)

In this regard, Mr. Kennedy also testified as follows:

> "Q. But you can't tell me what score you gave Mr. McMichael after you sat down with HR?
>
> A. Yeah. After I sat down with HR, yes.
>
> Q. What was the score?
>
> A. I cannot remember." (Kennedy deposition, page 21).

This case falls precisely within the Supreme Court's analysis in *Reeves*. The articulated reason given to the EEOC for Mr. McMichael's termination is <u>not</u> supported by the evidence, i.e., the depositions of Lopez and Kennedy and the exhibits to those depositions.

This case cries out to be tried. If the Defendants' reason for terminating Mr. Michael is arguably untrue, i.e., not supported by the evidence, then the next logical conclusion under *Reeves* is that Robert McMichael, the oldest of the six (6) Toolpushers on the Clear Leader was fired because of his age. It is more than appropriate that in this case the issue of age discrimination be presented to the trier of fact.

**II.   THE DECLARATIONS OF JENNIFER LOPEZ AND GORDON KENNEDY ARE UNRELIABLE AND SHOULD BE DISREGARDED.**

The Declaration of Gordon Kennedy, Rig Manager for the Clear Leader at the time of Mr. McMichael's termination is contradicted by his own deposition, the deposition of Ms. Lopez, the Performance Rating Chart (Exhibit "G" to Defendants' Motion) and the 2014 Evaluation of Plaintiff (Exhibit "H" to Defendants' Motion).

In his Declaration, (Exhibit "E" to Defendants' Motion), at page 3, Mr. Kennedy states as follows:

> "Mr. Mosley agreed that Mr. McMichael was a mediocre Toolpusher."

Mr. Gary Mosley was a Senior Toolpusher on the Clear Leader at the time of Plaintiff's termination and was the Assessor on Mr. McMichael's 2014 Evaluation (Exhibit "H" to Defendants' Motion). In his comments, he stated as follows:

> "He [McMichael] is currently in the Night Sr. Toolpusher position and is doing a *good* job." (Emphasis supplied.)

Mr. Robert Blansett was the O.I.M. on the Clear Leader and reviewed Mr. Mosley's Assessment of Plaintiff. In his Declaration, at page 3, Mr. Kennedy states as follows:

> "Mr. Blansett also informed me that Mr. McMichael was a mediocre Toolpusher."

However, in the 2014 Evaluation of Mr. McMichael, Mr. Blansett stated as follows:

> "Agree with the Assessment especially regarding his experience and like to see him passing it to the younger guys."

In direct contradiction of Mr. Kennedy's statement regarding Mr. Blansett, in Mr. McMichael's 2014 Evaluation, Mr. Blansett agreed with Mr. Mosley's Assessment that Plaintiff was doing a "good job."

At page 2 of his Declaration, Mr. Kennedy states as follows:

> "Mr. McMichael was never a Senior Toolpusher, and I would not have staffed him on the DCL as a Senior Toolpusher because of his performance."

As noted *supra*, Mr. Mosley identified Mr. McMichael as the Night Senior Toolpusher. If anything, Mr. Kennedy's Declaration, in direct contrast to Mr. Mosley's statement in the 2014 Evaluation creates an issue of fact. Was Mr. McMichael the Night Senior Toolpusher, was he

functioning as the Night Senior Toolpusher or is Mr. Kennedy correct when he states that Mr. McMichael was never a Senior Toolpusher.

The clarity of Mr. Kennedy's statements in his Declaration are in direct contrast to his testimony during his deposition where he repeatedly expressed a failure of memory:

> "Q. (Adelman) Ok. Can you tell me any other score that he [McMichael] was assigned, at the time of his termination?
>
> A. Nope." (Kennedy deposition, page 20)

<div align="center">✯✯✯</div>

> "Q. (Adelman) But you can't tell what score you gave Mr. McMichael after you sat down with HR?
>
> A. Yeah. After I sat down with HR, yes.
>
> Q. What was the score?
>
> A. I cannot remember." (Kennedy deposition, page 21)

<div align="center">✯✯✯</div>

> "Q. (Adelman): Ok. Then there were four other Toolpushers who were not designated as client Toolpushers. Do you know what shifts they worked?
>
> (Ms. Moll): I going to object, it assumes facts not in evidence.
>
> (Mr. Adelman): Fine, object.
>
> Q. (Adelman): Do you know?
>
> A. They worked a 12-hour shift.
>
> Q. But you don't know what hours?
>
> A. Not off hand." (Kennedy deposition, page 27)

✯✯✯

>"Q.   (Adelman) So you're saying you remember that you specifically saw him, but you can't say which - - what the specific dates were. Is that your testimony?
>
>A.    That is correct." (Kennedy deposition, page 34)

In his Declaration at page 3, Mr. Kennedy states that at the time of Mr. McMichael's layoff, there were four (4) Toolpushers on board the DCL. The four Toolpushers were Mr. McMichael, Chris Munger, Dwayne Latiolais and Carl Schneider.

Nevertheless, in his deposition, Mr. Kennedy admitted that the Plaintiff and Mr. Munger were "client" Toolpushers who had responsibilities different from the four (4) other Toolpushers working on the Clear Leader. (Kennedy deposition, pages 26-27). Mr. Kennedy specifically stated as follows during his deposition:

>"The client Toolpushers were a focal point for overseeing activities of the vessel, due to the limited supervision at night." (Kennedy deposition, page 27).

At pages 27-28 of his deposition, Mr. Kennedy admitted that there were four (4) other Toolpushers, "Mr. Lee, Leopard, Mr. Schneider and Mr. Latiolais." These four (4) Toolpushers, Lee, Leopard, Schneider and Latiolais were responsible for the immediate drilling operation as opposed to the "client" Toolpushers who were "to make sure there was no clashes of operations, just to make sure there was continuity and no conflicts of any operations." (Kennedy deposition, page 29). In her Declaration, at page 6, Ms. Lopez now claims Mr. McMichael had a composite score of 52%. This is contradicted by Exhibit "G" to Defendants' Motion which shows Mr. McMichael had a composite score of 71%. Further, and perhaps most importantly, in her

deposition, Ms. Lopez admitted that there is nothing in Defendants' records which documents that Mr. McMichael had a composite score lower than 71%. (Lopez deposition, page 33).

## CONCLUSION

Defendants' explanation for Mr. McMichael's termination is riddled with inconsistencies, each raising a genuine of material fact:

1. Were there four (4) or six (6) Toolpushers on the Clear Leader at the time of Plaintiff's termination.

2. Was Mr. McMichael's composite score 71% or 52%.

3. Was Mr. McMichael a Senior Toolpusher or, at a minimum, functioning as a Senior Toolpusher.

4. Was Mr. McMichael a "mediocre" Toolpusher, as Mr. Kennedy states, or doing a good job as a Night Senior Toolpusher as Mr. Mosley comments in the 2014 Evaluation.

5. Was Mr. McMichael spending too much time in the Toolpusher office and why wasn't this alleged criticism mentioned in his 2014 Evaluation. Further, why did Mr. Kennedy never raise this alleged issue with Mr. McMichael?

6. Ultimately, there is a genuine issue of fact as to whether or not Mr. McMichael was replaced by a less qualified, younger employee.

As noted *supra*, this case cries out to be tried.

Respectfully submitted, this the 9th day of August, A.D., 2018.

             s/MICHAEL ADELMAN, ESQ.
             MS STATE BAR NO. 1153
             COUNSEL FOR: ROBERT McMICHAEL, PLAINTIFF

MICHAEL ADELMAN, ESQUIRE
ADELMAN & STEEN, L.L.P.
POST OFFICE BOX 368
HATTIESBURG, MS 39403-0368
PH: 601/544-8291; FAX: 601/544-1421
MS STATE BAR NO. 1153

COUNSEL FOR PLAINTIFF, ROBERT McMICHAEL

## CERTIFICATE OF SERVICE

This is to certify that I, Michael Adelman, Esq., counsel for Plaintiff, Robert McMichael has electronically filed in **CIVIL ACTION NO.:2:16CV33-KS-MTP** the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

>Mark P. Caraway, Esq.
>Wise Carter Child & Caraway, P.A.
>401 East Capitol Street, Suite 600 (39201)
>Post Office Box 651
>Jackson, MS 39205-0651
>
>Joe D. Stevens, Esq.
>601 Adeline Street
>Hattiesburg, MS 39401
>
>Stefanie R. Moll, Esq.
>Michael P. Jones, Esq.
>Morgan, Lewis & Bockius, LLP
>1000 Louisiana Street, Suite 4000
>Houston, TX 77002

This, the 9th day of August, A.D., 2018.

>s/ MICHAEL ADELMAN, ESQ.

MICHAEL ADELMAN, ESQUIRE
ADELMAN & STEEN, L.L.P.
POST OFFICE BOX 368
HATTIESBURG, MS 39403-0368
PH: 601/544-8291; FAX: 601/544-1421
MS STATE BAR NO. 1153

COUNSEL FOR PLAINTIFF, ROBERT McMICHAEL