IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROBERT MCMICHAEL                                           PLAINTIFF

v.                               CIVIL ACTION NO. 2:16-cv-148 KS-MTP

TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, INC., TRANSOCEAN RIGP DCL, LLC
and TRANSOCEAN OFFSHORE USA, INC.                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on Defendants' Motion for Summary Judgment [56]. Plaintiff has filed his response and memorandum in opposition [59, 60], and Defendants have filed a reply [63]. Having reviewed the pleadings, the parties' submissions, the record in this matter, and the applicable law, and otherwise being fully advised in the premises, the Court concludes that the motion is well taken and will be **granted**.

**I.     SUMMARY OF THE CASE**

Transocean discharged Robert McMichael ("McMichael") on April 25, 2015.[1] McMichael was 59 years old at the time of his termination and had been employed with Transocean for just over fourteen (14) years on deep water rigs, most recently as a toolpusher. In his Second Amended Complaint McMichael alleges that the Defendants ("Transocean") discharged him because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. McMichael was terminated and his toolpusher position on the Discoverer Clear Leader

---

[1] In its Memorandum in Support of the Motion, the Defendants contend that only Defendant Transocean RIGP DCL, LLC employed McMichael and thus, is the only proper defendant in this matter. [57] at 1 n.1. Because such issue is not before the Court, the Court uses the term "Transocean" to refer to all defendants collectively regardless of what entity is actually facing potential liability.

was filled by Jody Eckert, an individual who was 49 years old.

Defendants contend that McMichael was one of approximately 7,320 Transocean employees who have been laid off in the past four years as a result of one of the largest economic downturns in the history of the oil and gas industry. Transocean brings this summary judgment motion on the grounds that McMichael can produce no evidence in this case showing that he was laid off because of his age.

## II. BACKGROUND

Transocean hired McMichael in 2001 as a Driller I and assigned him to an offshore drilling rig. [56-3]. He was 46 years old at the time he was hired. [56-4] at 13:10-12. McMichael received numerous promotions and pay raises throughout his employment with Transocean. *Id*. at 45:12-47:2; [56-3]. In February 2009, after working as a driller and toolpusher on a number of rigs, McMichael went to work as a toolpusher on a drillship called the Discoverer Clear Leader ("DCL"). [56-4] at 47:3-48:5. Gordon Kennedy was the Rig Manager of the DCL from August 1, 2013 until April 17, 2016. [56-5] at ¶ 3; [56-4] 69:7-13, 69:25-70:3. Gary Mosley was a senior toolpusher on the DCL and one of McMichael's supervisors. [56-4] at 26:27-27:1. Robert Blansett was an offshore installation manager (OIM) on the DCL. [56-4] at 36:25-37:6. Robert Owen was also an OIM who supervised McMichael when he was a toolpusher on the DCL. [56-4] 64:8-11. McMichael worked on the DCL for over five years until his layoff in April 2015. [56-4] at 47:6-13; 48:6-8. He got along well with all of his supervisors and never had any issues. [56-4] at 65:4-69:6.

Due to an economic downturn in the oil and gas industry, Transocean has reduced its offshore fleet by 44 rigs over the past four years, which has resulted in 7,320 Transocean

employees being laid off between the first quarter of 2014 and July of 2018. [56-2] at ¶¶ 4, 6. Transocean's HR department was tasked with managing these large reductions in force. [56-2] at ¶ 4. Transocean devised and utilized a system known as the "high-grading process" to select employees for inclusion in these reductions in force. *Id*. This process results in layoffs of lower graded employees, which is then followed by reorganization of the remaining offshore workforce. *Id*. at ¶ 5. The goal of the high grading process is to reduce the overall size of the workforce while identifying and retaining the best offshore rotational employees. *Id*. at ¶ 4.

In early 2015, Transocean "cold-stacked"[2] six drilling rigs, which reduced the overall headcount on those rigs from 989 employees to zero. [56-2] at ¶ 7. Consequently, Transocean engaged in the high grading process to determine how to reorganize its workforce to ensure that it retained its top talent. *Id*. at ¶ 4: [56-1] 8:8-17.

The high grading process has three basic components—(1) performance; (2) ranking; and (3) potential. [56-1] at 8:8-23; [56-2] at ¶ 9. The performance score is based on the employees' most recent performance appraisal and is comprised of two components that are averaged together to arrive at the overall performance score. [56-2] at ¶ 10. The Rig Manager determines both ranking and potential. [56-2] ¶¶ 11-12. These three ratings are converted into a percentage and averaged together to determine an employee's "Total Score." [56-2] at ¶ 9. The Total Score is used as a data point to facilitate conversations between the Rig Managers and HR, but it is the Rig Managers who are ultimately responsible for the lay-off decisions. [56-1] at 14:3-15:10; 21:25-22:13; [56-2] at ¶ 21; [56-6] at 15:9-21:15. During these conversations, the Rig Managers and HR discuss the

---

[2] A cold-stacked rig is one that is completely shut down and rendered non-operational. [56-2] ¶ 6.

employee ratings, validate the ratings, fill in information missing from the ratings, assess employees' overall performance, and make decisions pertaining to the reorganization of Transocean's workforce, including who to lay off, who to retain, and who to transfer. *See id*. Because layoffs were frequent during the time of McMichael's layoff, it was not uncommon for Rig Managers to rank employees and evaluate their potential after the meeting with HR had taken place. [56-2] at ¶ 14.

On his 2014 Performance Appraisal, completed by Gary Mosley and Robert Blansett, McMichael received a rating of #3 "Fully Successful." [58-8]. Based on the outcome of the high grading process and discussions with HR, Gordon Kennedy, who was 51 years old at the time, made the decision to lay off McMichael as part of a large reduction in force, which termination occurred on April 25, 2015. [56-5] at ¶¶ 2, 4, 10-12; [56-4] at 48:6-8; [56-1] 62:11-15, 65:9-11. Of the twenty-five toolpushers who were ultimately laid off (including McMichael), nine were working on rigs that were not cold stacked. [56-2] at ¶ 20. In 2015, almost all of the toolpushers who were laid off worked on rigs that were not cold stacked at the time. *Id*.

Following McMichael's layoff, Kennedy then had three weeks to backfill his position with a higher graded employee. [56-5] at ¶ 12. He requested a list of toolpusher replacements from HR along with past appraisals and work history and spoke to the previous supervisors and Rig Managers of the higher graded toolpushers to get their feedback before making the backfill selection. *Id*. After reviewing Jody Eckert's most recent performance appraisal in which he received a rating of #4 "Superior," reviewing documentation on Eckert related to the high grading process, and speaking to personnel with whom he worked, Kennedy selected Jody Eckert, who

was 49 years old at the time, to fill the tool pusher position and replace McMichael on the DCL.[3] *Id.*; [56-2] at ¶ 22; [56-9]. Kennedy had never worked with or met Mr. Eckert when he selected Eckert for the DCL and was also not aware of Mr. Eckert's age at the time he was selected. *Id*. McMichael also does not know Mr. Eckert and has never worked with him. [56-4] at 28:23-25.

In June 2015, McMichael received an email from Allan Windham, a mechanical supervisor on the DCL, who attached a list called a "strength report" that showed the birth dates of toolpushers on the DCL and told McMichael to take note of Eckert's age; it was then that McMichael learned for the first time that someone younger than he replaced him. [56-4] p.102-104; [56-7]. McMichael never complained about age discrimination while employed there. [56-4] 123:7-10. He does not know who made the decision to lay him off, and he does not know who discriminated against him because of his age. [56-4] 113:4-11; 123:11-16. McMichael knew Gordon Kennedy personally and got along well with him, with no professional problems working with Mr. Kennedy. [56-4] 68:17-69:3. In his declaration in opposition to summary judgment, McMichael recalls that Robert Owen, an OIM on the DCL, told McMichael at least twice in July 2014 that because that McMichael was over 59½ years old, he had nothing to worry about because he could receive his pension without the IRS imposing a penalty. [59-2] at ¶ 13. McMichael felt this was a coded reference to his age. *Id.*

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

---

[3] Mr. Eckert was subsequently laid off on September 1, 2016 as part of ongoing reductions in force. [56-2] at ¶ 19.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Am. Gen. Life Ins. Co. v. Hannah*, No. 1:12-cv-00087, 2014 WL 1413540 at *9 (N.D. Miss. Apr. 11, 2014) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex,* 477 U.S. at 321. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 527 F.3d 134, 138 (5th Cir. 2010) ("An issue is material if its resolution could affect the outcome of the action."). "Summary judgment is mandatory against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Fife v. Vicksburg Healthcare, LLC,* 945 F. Supp. 2d 721, 729 (S.D. Miss. 2013) (internal quotations omitted) (quoting *Brown v. Offshore Specialty Fabricators, Inc.,* 663 F.3d 759, 766 (5th Cir. 2011)).

### B. Analysis of Evidence Under ADEA Analytical Framework

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a). When there is no direct evidence of age discrimination, as is the case here, it is well established that the plaintiff must follow the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[4] *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (assuming without deciding, that the *McDonnell Douglas* burden-shifting framework applies to ADEA claims); *Novak v. Chicago Title of Tex., L.L.C*., No. 18-50040, 2018 WL 3752092 at * 1-2 (5th Cir. Aug. 6, 2018); *Moss v. BMC Software, Inc*., 610 F.3d 917, 922 (5th Cir. 2010); *E.E.O.C. v. La. Office of Cmty. Svcs*, 47 F.3d 1438, 1443 (5th Cir. 1995); *Fife*, 945 F. Supp. at 732.

#### 1. *Prima facie* case

Defendants set forth the elements of a typical *prima facie* case, wherein a plaintiff raises an inference of age discrimination by establishing "(1) he is within the protected class—i.e., at least 40 years old; (2) that he was qualified for the position; (3) that he suffered an adverse employment decision; and (4) that he was replaced by someone younger or treated less favorably than a similarly situated younger employee." [57] at p. 11 (citing *Fife*, 945 F. Supp. 2d at 733). However, because McMichael was terminated as part of a reduction-in-force ("RIF"), the Court

---

[4] Plaintiff has not argued that he has presented any direct evidence of discrimination and has not taken issue with the burden-shifting framework for a circumstantial case.

7

would apply the Fifth Circuit's slightly different elements of a *prima facie* case.[5] *See Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). This modified showing in RIF cases came about due to the inability in many situations for a plaintiff to show that he/she was replaced by someone substantially younger. *See Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991). Notwithstanding, for purposes of the motion, the Defendants do not dispute that McMichael can establish that he was replaced by someone younger, and so they concede, and the Court will assume without deciding, that McMichael meets this initial burden. [57] p. 11.

## 2. Defendant's Legitimate Non-Discriminatory Reason

If the plaintiff successfully makes out a *prima facie* case, the burden then shifts to the employer "to articulate a legitimate non-discriminatory reason for the termination." *Goudeau v. Nat'l Oilwell Varco, L.P.* 793 F.3d 470, 474 (5th Cir. 2015). It is a burden of production, not persuasion, and it involves no credibility assessments. *See Reeves*, 530 U.S. at 142. The defendant can meet this burden by presenting evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id*. (quoting *St. Mary's*, 509 U.S. at 506-508)).

Transocean maintains that McMichael was terminated as a reduction in force due to the economic downturn in the oil and gas industry and the reorganization of its workforce utilizing the high grading process. Such reasons "are presumptively legitimate and nondiscriminatory because

---

[5] A party in an RIF case must show "(1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Nichols*, 81F.3d at 41 (quoting *Amburgey v. Corhart Refreactories Corp., Inc*., 936 F.2d 805, 812 (5th Cir. 1991)).

a reduction in force 'is itself a legitimate, nondiscriminatory reason for discharge.'" *Tyler v. La-Z-Boy Corp.*, 506 Fed. Appx. 265, 270 (5th Cir. 2013) (quoting *E.E.O.C. v. Tex. Instrs., Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Because McMichael's position was not singularly eliminated and because the elimination was allegedly due to restructuring during the economic downturn using the high grading process, Transocean has satisfied its burden of articulating an adequate legitimate, nondiscriminatory reason for the challenged employment action. Thus, the question becomes whether McMichael sufficiently carries his burden to show pretext.

### 3. Pretext

Once a defendant's burden of production is met, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason is not true, but instead is a pretext for intentional discrimination. *St. Mary Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993); *Goudeau*, 793 F.3d at 474 (quoting *Squyres v. Heico Cos., L.L.C.,*, 782 F.3d 224, 231 (5th Cir. 2015)). "A plaintiff may show pretext . . . by showing that the employer's proffered explanation is false or unworthy of credence." *Novak*, 2018 WL 3752092 at *2 (internal quotations omitted) (quoting *Jackson v. Cal-W. Packaging, Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)).

Under the ADEA, the burden of persuasion remains always with the plaintiff, and McMichael must demonstrate by a preponderance of the evidence that he would not have been terminated *but for* the alleged discrimination. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009). Thus, in an age discrimination claim, a plaintiff cannot prevail by showing that age was merely a factor—age must be "*the* 'reason' that the employer decided to act." *Fife*, 945 F. Supp. 2d at 732-733 (quoting *Gross*, 557 U.S. at 176) (emphasis added).

9

If the plaintiff shows that the employer's justification is false, such a showing, coupled with the prima facie case, "may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence." *Reeves*, 530 U.S. at 148. However, the Fifth Circuit cautions that

> such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet "no rational factfinder could conclude that the action was discriminatory." Whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."

*Price,* 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves,* 530 U.S. at 18-149 (2000)). While a "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscrimatory explanation," the ultimate issue is "whether a reasonable jury could find that [the plaintiff's] evidence supports an inference of age discrimination." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 n. 3 (5th Cir. 2002).

### a. McMichael's evidence of pretext

In an effort to establish age discrimination, McMichael relies on the following five facts, which the Court will address in turn: (1) that he was replaced by younger, less qualified employee; (2) testimony that McMichael spent too much time in the Senior Toolpusher's office is uncorroborated; (3) that McMichael's composite Total Score was 71% and remained at 71% and Eckert's Total Score was 59%; (4) McMichael was ranked with four toolpushers when there are actually six toolpushers; and (5) that there were coded references to McMichael's age by Robert

Owen, an OIM on the DCL, in July 2014.[6] [60] p. 2.

### i. Replaced by younger, less qualified individual

The fact that McMichael was replaced by someone younger is typically only a portion of the *prima facie* case that assists in raising the initial inference of age discrimination. As for Eckert being "less qualified," McMichael relies on Transocean's high grading process in which he asserts that because McMichael's Total Score was 71% and Eckert's was 59%, he was replaced by someone less qualified. [60] p. 7. This issue will be addressed in conjunction with the other facts that McMichael relies on to argue that the high grading process was riddled with inconsistencies and thus, cannot be believed.

### ii. Issues with the high grading process

As to facts (2), (3), and (4) above, McMichael argues that these facts show that the Defendants' nondiscriminatory reason is false or unworthy of credence. He asserts that the high grading process as applied to McMichael is riddled with inconsistencies, which render it "unworthy of credence" and allows for the inference that "the employer is dissembling to cover up a discriminatory purpose, i.e., age discrimination." [60] p. 5-6. The Court disagrees because these purported issues of fact relating to the application of the high grading process to McMichael do nothing to undermine or raise an issue of fact as to the overarching reason for the termination, which is the reduction in force and restructuring of the work force, which was necessary to deal with rigs that were cold stacked.

---

[6] McMichael's declaration states that Owen's comments were made in July 2014. [59-2] at ¶ 13. His memorandum of law states that the comments were made in July 2017. [60] p.2. The Court relies on the date in the sworn declaration.

The main point McMichael argues is that there is no documentation showing that McMichael scored anything but a 71% during the high grading process; thus, because 71% truly is McMichael's Total Score, Transocean's replacing him with someone who scored 59% and was younger reveals age discrimination. However, the testimony from Jennifer Lopez and Gordon Kennedy was consistent that 71% was not McMichael's true Total Score, and as Ms. Lopez explained and showed by calculation, 71% is only the performance portion. [56-6] 20:19-21:15; [56-1] 11:12-13:19; [56-2] ¶¶ 13, 14. Both Lopez and Kennedy testified, and it is undisputed, that during the process there is a meeting between the Rig Managers and HR where the three factors of the high grading process are discussed. [56-6] 21:1-17; [56-2] ¶¶ 14-15. Lopez explains in her declaration that based on Kennedy's input as to ranking and potential McMichael's true Total Score was 52%. [56-2].

In his deposition and declaration, Kennedy explained the reasons for ranking McMichael fourth out of four toolpushers and giving him a potential score of zero. [56-5] ¶¶ 6-9. McMichael now takes issue with Kennedy's explanation as to how and why McMichael was ranked as he was. McMichael argues that there were not four toolpushers but six and that Kennedy's opinion that McMichael spent too much time in the office is uncorroborated, as it was never mentioned to McMichael. [59-2] ¶¶ 4, 10; [60] p. 2. However, these issues of fact do not raise issues of fact as to pretext of discrimination. These are merely issues, which if resolved in McMichael's favor, show only that perhaps Transocean made some mistake in their scoring, and such is not sufficient to overcome summary judgment. As the Fifth Circuit has instructed:

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even

arbitrary personnel decisions, but only from decision which are unlawfully motivated.

*Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988).

In other words, the issues of fact McMichael raises would not provide a basis for a jury to disbelieve the proffered reason for the discharge (reduction in force) but only whether the high grading process was applied correctly. "Motive is the issue," and a dispute in evidence relating to how McMichael's Total Score was computed "does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). "The question is not whether the employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Id.* "If age does not motivate the employer's decision, then a 'discharge may well be unfair or even unlawful yet not be evidence of age bias under the ADEA.'" *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996) (quoting *Moore*, 990 F.2d at 819); *Cf. Wilson v. Exxon Mobil Corp.*, 575 Fed. Appx. 309 (5th Cir. 2014).[7]

---

[7] Although *Wilson* was a race discrimination case, it utilizes the *McDonnell-Douglas* burden shifting analysis and the issue of pretext; thus, it is, at the least, persuasive. That case involved a gas spill that required costly remediation. *Id.* at 313. Two employees, one Caucasian and one African American were terminated for failing to follow procedures in shutting down the refinery. *Id.* at 311-312. In an effort to rebut the employer's nondiscriminatory reason for the termination, the plaintiff argued that the company did not perform a thorough or fair investigation because if it had, it would have to have concluded that the plaintiff played no role in the incident. *Id.* at 313. The court found that at its core, the lawsuit was based on the plaintiff's "disagreement with Exxon's conclusion that he played a role in the gasoline spill that occurred on his watch . . . ." *Id.* The court went on to explain that despite the plaintiff's disagreement with the outcome of the investigation, "the true question before this court is not whether Exxon performed a stellar investigation or whether its investigative findings were correct. . . . Our inquiry is focused on whether Wilson presented substantial evidence to demonstrate that Exxon's proffered reasons were pretext for racial discrimination." *Wilson*, 575 Fed. Appx. at 313-314. Because Exxon terminated both employees, one Caucasian and one African American, and because the record was devoid of any persuasive evidence that Exxon used the incident as pretext to terminate Wilson based on his race, the court affirmed summary judgment.[7] *Id.* at 314.
  Here, just as Wilson complained that if the investigation had been done properly, the conclusion would have been different, McMichael essentially argues that if his ranking and potential would have been properly calculated, his

### iii. Comments made by Robert Owen

Finally, McMichael relies on comments made by Robert Owen, an OIM, as further evidence that McMichael was discriminated against because of his age. McMichael states that Owen told him, "because [McMichael] was over 59½ years of age, [he] had nothing to worry about. [McMichael] could receive [his] pension without receiving a financial penalty from the IRS." [59-2] ¶ 13. When used as direct evidence, the Fifth Circuit applies a four-part test to determine whether the comments are sufficient to overcome summary judgment. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Under this test, the remarks must be "(1) age related; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *See id.* (citing *Brown v. CSC Logic, Inc*, 82 F.3d 651, 644 (5th Cir. 1996)). If offered as circumstantial evidence, the court applies a more flexible two-part test. *See id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). In that instance, the remark must (1) demonstrate discriminatory animus and (2) be made by a person primarily responsible for the employment or by a person with influence or leverage over the formal decision maker. *See id.*

Whether McMichael intends to use the comments as direct evidence or circumstantial evidence, either purpose fails. In both cases, the remark must be made by the person either with authority over McMichael's termination or by a person with influence or leverage over the formal

---

score would have been higher. As in *Wilson*, the question before this Court is not whether Transocean ranked him among the correct amount of toolpushers or whether he spent too much time in the office, the Court must focus on whether Transocean's proffered reasons were pretext for age discrimination. Just as the court found in *Wilson*, this Court finds there is simply no persuasive evidence that Transocean used its reduction in force due to an economic downturn as a pretext to terminate McMichael because of his age.

decision maker. It is undisputed that Gordon Kennedy alone made the decision to terminate McMichael. Although as an OIM on the DCL, Robert Owen did supervise McMichael when he was a toolpusher, there is no evidence that Owen played any role in the termination decision or that he ever had any leverage or influence over Gordon Kennedy in any way. As for the remarks themselves, they are admittedly "coded" and are so vague that they are simply not probative of discrimination. Accordingly, the comments made by Owen are inconsequential and insufficient to overcome summary judgment because they are merely "stray remarks." *See Curry v. Hollywood Casino Corp.*, No. 2:11-cv-195-SA-SAA, 2013 WL 1291762, at \*4 (N.D. Miss. Mar. 28, 2013).

### b. McMichael's inability to overcome summary judgment

Even assuming that McMichael's issues of fact with regard to the high grading process were sufficient evidence to reject Transocean's explanation for the termination, the Court still finds, as the Supreme Court in *Reeves* found permissive, "no rational factfinder could find that the action was discriminatory."[8] 530 U.S. at 148. The Supreme Court explained in *Reeves* that an employer would be entitled to judgment as a matter of law if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred. *See id*. The Court finds that to be the case here. McMichael creates only a weak issue of fact in that he addresses only discrepancies in Kennedy's application of the high grading process to McMichael but provides no evidence undermining the economic down turn and reduction of force or the fact that Transocean formulated

---

[8] Bear in mind, the Supreme Court was deciding whether there was adequate evidence to sustain a jury's finding of liability when no additional evidence of discrimination had been presented beyond the *prima facie* case and the rebuttal of the employer's nondiscriminatory reason. Here, the Court must decide whether there is even an issue to present to a jury.

15

and utilized an objective high grading process to determine lay-offs and workforce reorganization.

There is also uncontroverted evidence that evinces a lack of any intentional discrimination. For example, McMichael was only one of twenty-five toolpushers who were laid off over a two-year period. Of the twenty-five, seven were under the age of forty. [56-7]. McMichael got along with his supervisors, including Gordon Kennedy. McMichael was performing adequately, and he never complained of any age-related issues during his employment. Eckert was chosen to replace McMichael as a toolpusher on the DCL only after the termination decision was made. Also, it is undisputed that Kennedy was unaware of anyone's age when making these employment decisions. Further, at the time Kennedy made the decision to terminate McMichael, Kennedy was 51 years old. Kennedy's "membership in the same protected class as [McMichael] bolsters the inference that age discrimination was not the reason for his termination." *Kelly v. Costco Wholesale Corp.*, 632 Fed. Appx. 779, 783 (5th Cir. 2015) (citing *Brown v. CSC Logic, Inc.*, *supra*).

As the Fifth Circuit noted in *Price*, "*Reeves* does not relieve a plaintiff of his burden to present evidence that will permit a rational factfinder to infer intentional discrimination." 283 F.3d 721 n. 4. There is simply no relevant evidence relating to age, other than the strength report, which merely shows dates of birth and that Eckert was younger than McMichael. The Court finds there is simply not enough evidence in this case for a jury to reasonably infer that McMichael would not have been terminated "but for" his age. *See Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000).[9]

---

[9] The court in *Vadie* stated there must be a reasonable inference that age was a "determinative" factor in the employment action, but nine years after the *Vadie* decision, the Supreme Court clarified in *Gross*, *supra*, that a plaintiff must establish that he would not have been terminated "but for" his age.

## IV. CONCLUSION

Based on the foregoing, the Court finds that McMichael has failed to present sufficient evidence raise a genuine issue of fact as to pretext in this case. Therefore, judgment as a matter of law is warranted in favor of the Defendants. Accordingly, it is hereby ORDERED that Defendants' Motion for Summary Judgment is granted and a final judgment in favor of Defendants shall be entered separately on all claims by Plaintiffs. In light of this ruling, all other pending motions shall be denied as moot.

SO ORDERED AND ADJUDGED this 10th day of December 2018.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE